UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHERYL F. GAGLIANO,
*Individually and as Fiduciary of the Estate of*
*Ramond B. Gagliano, Deceased*

                               Plaintiff,

                v.

UNITED STATES OF AMERICA,

                               Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-7930-SJB-JMW

**BULSARA, United States District Judge:**

      Cheryl Gagliano, on behalf of herself and the estate of her late husband, sued the Government for medical malpractice that she alleges preceded his death at the Northport Veterans Affairs Medical Center. (Compl. dated Nov. 14, 2025 ("Compl."), Dkt. No. 1). Her husband, a vulnerable dementia patient, received such grossly negligent care that the final months of his life were a nightmare of various wounds, drug-resistant bacterial infections, and sepsis—all of which Gagliano claims was preventable with appropriate medical care. (*Id.* ¶¶ 14–16, 20, 45–49).

      Gagliano first filed an administrative tort claim with the Department of Veterans Affairs ("VA"). (*Id.* ¶ 2). After the claim was denied, she sought reconsideration. (*Id.* ¶¶ 3–4). And when the VA finally sent a letter denying reconsideration, it informed Gagliano that she had six months from the date of the letter to file a lawsuit in federal court. (*Id.* ¶ 5; Letter Den. Recons. dated May 17, 2024 ("Ltr. Den. Recons."), attached as Ex. D to Compl., Dkt. No. 1-5). She filed this case within that six-month timeline.

But unbeknownst to her, the VA's statement was false. The Government, which represents the VA, says the time to file suit had been running from the moment she filed her request for reconsideration, and was unaffected by when the VA decided the reconsideration request or what it said about her time to file. (Def.'s Mot. to Dismiss dated May 2, 2025 ("Def.'s Mot. to Dismiss"), Dkt. No. 24 at 5–7). In any event, the Government's position is that the VA had no authority to extend Gagliano's time to file a lawsuit. (*Id.* at 7). But Gagliano listened to what the VA told her. And by doing so, her lawsuit is now time-barred. Despite the VA's misinformation, the Government's position is that Gagliano should not have trusted what the VA told her, and that she should have known that the VA could not give her more time to file. (*Id.* at 10–11; Def.'s Reply in Support of Mot. to Dismiss dated June 4, 2025 ("Def.'s Reply"), Dkt. No. 26 at 9). In other words: tails I win, heads you lose, and the Government always wins. No principle of good government or equity (or common sense) would countenance such a result. And thankfully for Gagliano—because the Court is only equipped to apply the law—the law does not either. The motion to dismiss is denied.

## FACTUAL AND LEGAL BACKGROUND

The legal background frames this case. Gagliano, because she is seeking relief (both individually and on behalf of her husband's estate) against an arm of the federal government—a VA hospital is such an entity—must bring her lawsuit under the Federal Torts Claims Act (FTCA). *See* 28 U.S.C. §§ 2674, 1346(b). The FTCA contains a short, six-month statute of limitations bar. A tort claim, like Gagliano's, is "forever barred," unless the federal suit is commenced "within six months after the date of

2

mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).  As the text implies, this six-month period begins running after an agency issues a "final denial of the claim." *Id.*  In other words, a plaintiff must first file a claim with the federal agency, the agency must resolve the claim, and then the six-month clock begins to run.

A regulation from the Department of Justice ("DOJ") contemplates reconsideration of an agency denial.  The regulation, which the VA incorporated into its own regulations, provides that a claimant can seek "reconsideration of a final denial of a claim," so long as the final request is made within the six months of the denial.  28 C.F.R. § 14.9(b); 38 C.F.R. § 14.600(d).  What happens to the limitations period that controls the time in which a plaintiff has to file her federal lawsuit?  It is paused, or tolled, but only to a point: that period "shall not accrue until 6 months after the filing of a request for reconsideration." 28 C.F.R. § 14.9(b).  In other words, the limitations period begins to run six months after the motion for reconsideration is *filed*.

That brings us to the facts.  Gagliano filed her claim with the VA on January 26, 2023.  (Compl. ¶ 2; Admin. Tort Claim dated Jan. 26, 2023, attached as Ex. A to Compl., Dkt. No. 1-2 at 1).  The VA denied her claim on September 26, 2023.  (Compl. ¶ 3; Letter Den. Claim dated Sep. 26, 2023, attached as Ex. B to Compl., Dkt. No. 1-3 at 1).  If she had not filed a motion for reconsideration, she would have had until March 26, 2024 to file her federal lawsuit.  But she sought reconsideration on October 27, 2023.  (Compl. ¶ 4; Letter Req. Recons. dated Oct. 27, 2023, attached as Ex. C to Compl., Dkt. No. 1-4 at

3

1). The VA then denied her reconsideration request on May 17, 2024. (Compl. ¶ 5; Ltr. Den. Recons.).

In denying her motion for reconsideration, the VA sent a letter to Gagliano. It informed her that:

> [f]urther action on this matter may be instituted in accordance with the FTCA . . . which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. Such a suit must be initiated, however, within *six (6) months after the date* of mailing of this notice of final denial *as shown by the date of this letter.*

(Ltr. Den. Recons. (emphasis added)). Six months from the date of the letter was November 17, 2024. Gagliano filed this lawsuit on November 14, 2024. That is where all agreement between the parties ends.

## ANALYSIS

The Government takes the position that Gagliano had only until October 27, 2024 to file her lawsuit.[1] (Def.'s Mot. to Dismiss at 5). Why? It contends that the reconsideration regulation only tolls the limitations period for six months. So, because Gagliano sought reconsideration on October 27, 2023, 28 C.F.R. § 14.9 ("§ 14.9") tolled

---

[1] "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted[.]" *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Once the facts are construed in the light most favorable to the non-moving party—here, Gagliano—to avoid dismissal there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal citation and quotations omitted)). "A complaint that is time-barred fails to state a claim on which relief may be granted[.]" *Khalil v. Pratt Inst.*, 818 F. App'x 115, 116 (2d Cir. 2020).

4

the limitations period only until April 27, 2024. (*Id.*). And six months after that date brings us to October 27, 2024. By filing on November 14, 2024, Gagliano is 18 days too late. (*Id.* at 6). Said differently, the fact that the VA did not decide Gagliano's reconsideration motion until May 17, 2024 is of no moment. Gagliano should not have waited for the VA to get around to deciding her request for reconsideration; she should have understood the limitations period began to run even before the VA decided the reconsideration request.

Here is, of course, where the Government plays heads I win, tails you lose. And it does so twice, always to Gagliano's disadvantage. First, upon the filing of Gagliano's reconsideration request or anytime thereafter, the Government never told her that she must not wait for the VA to decide her request, and that if she did, she risked waiving her right to bring a federal lawsuit. Actually, Gagliano is permitted to wait and rely on the VA's consideration of her motion—but only for only for so long—that is, only until the VA itself ignores the timeline set out by § 14.9(b) giving the agency six months to reconsider. After six months, she should have realized on her own that the VA's process should be disregarded, and she should go to federal court. (Compare this to the situation where no reconsideration is sought. Gagliano *must* wait for the VA to decide her case. If she doesn't, her case gets dismissed for filing *too early*.) Second, when the VA got around to denying her reconsideration motion on May 17, 2024, it did not just fail to inform her that the statute of limitations began running some 20 days earlier, on April 27, 2024. (*See* Ltr. Den. Recons.). Instead, the VA did something far worse: it affirmatively told Gagliano that she had until November 17, 2024 to file her lawsuit.

5

But when she relied on that representation, the Government turned around and told her that she was wrong to rely on it, and that her lawsuit is time-barred. Devoid of any accountability, the Government never once acknowledges that the VA should not be issuing letters like the one it did, nor does it take responsibility for the fact that the VA plainly misled Gagliano. Instead, the Government blames the late filing entirely on her.

The doctrine of equitable tolling prevents such a Kafkaesque result. "The procedural requirements that Congress enacts to govern the litigation process are only occasionally as strict as they seem. . . . Congress legislates against the backdrop of judicial doctrines creating exceptions, and typically expects those doctrines to apply." *Harrow v. Dep't of Def.*, 601 U.S. 480, 483 (2024). "[M]ost time bars are nonjurisdictional," *id.* at 484 (citation omitted), including under the FTCA. *United States v. Wong*, 575 U.S. 402, 416 (2015) ("The government thus cannot show that the phrase 'shall be forever barred' in § 2401(b) plainly signifies a jurisdictional statute, as our decisions require."). As a result, the FTCA's six-month time bar is subject to equitable tolling. *Id.* at 420.

Equitable tolling pauses a statute of limitations. *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014). "[T]o benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims," *China Agritech v. Resh*, 584 U.S. 732, 743 (2018), and there must be "some extraordinary circumstance" that prevents [her] from bringing a timely action," *CTS Corp.*, 573 U.S. at 9. "[T]he diligence prong . . . covers those affairs within the litigant's control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016). Of particular relevance here, "equitable tolling

6

may be appropriate where a plaintiff has been lulled into inaction by . . . federal agencies[.]" *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (quotations and citation omitted) (collecting cases). At bottom, "[a] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland v. Fla.*, 560 U.S. 631, 651–52 (2010) (quotations and citations omitted). But equitable tolling is "sometimes necessary as a matter of fairness[.]" *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quotations and citation omitted).

Gagliano was diligent in pursuing her claims. Her lawyers first filed a claim with the VA, as she was required to (as opposed to first racing to federal court). Within one month of receiving a denial letter, she timely sought reconsideration. She then filed this lawsuit within the period that the VA told her. Yet, the Government claims that she was not diligent, insisting that her lawyers should have disregarded the VA's representation and they should have known, based on clearly established law, that Gagliano's limitations period was shorter than what the VA said. The arguments are meritless.

For one thing, it is quite something for the Government to say that individuals should ignore what its agency says, but at the same time, in countless cases in this District, assert that its actions are entitled to a "presumption of regularity" and deference. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies[.]"); *United States v. Gonzalez*, No. 19-CR-0530, 2021 WL 1254558, at *6 (E.D.N.Y. Apr. 5, 2021)

7

(noting Government's argument that administrative proceedings are entitled to the presumption of regularity); *Saleh v. Pompeo*, No. 17-CV-4574, 2020 WL 1919406, at *5 (E.D.N.Y. Apr. 20, 2020) (noting Government's argument that it is entitled to the presumption that it properly designated the administrative record); *Almaklani v. Trump*, 444 F. Supp. 3d 425, 436 (E.D.N.Y. 2020) (same). Yet here, the Government says Gagliano should not have accepted the VA's representation and calculated the limitations period on her own.

The Government made a misrepresentation in the VA's letter, and Gagliano relied upon that misrepresentation in choosing to file on November 14th, instead of in October. In response, the Government contends that an "agency's erroneous statement" cannot extend the statute of limitations, (Def.'s Reply at 9), and that Gagliano "cannot rely upon the . . . letter from the VA," (Def.'s Mot. to Dismiss at 7). The Government asks Gagliano, this Court, and the public to ignore what it says when the law requires a plaintiff first go to the Government before bringing suit. Presumably, the Government does not believe that Gagliano is free to ignore the denial, read it as a vindication, and file a motion to enforce a damages judgment if her lawyers decided the VA's decision was erroneous? "[B]asic notions of fairness must preclude the government from taking advantage of its error, and . . . a contrary result would work a serious and manifest injustice." *Schwebel v. Crandall*, 967 F.3d 96, 106–07 (2d Cir. 2020) (citation modified). Gagliano was entitled to rely on the VA's letter, in the same way the Government is entitled to rely on the VA's conclusion that her reconsideration motion was denied. *Cf. Bond v. United States*, 934 F. Supp. 351, 357 (C.D. Cal. 1996) ("In

8

those cases in which a claimant has been given the option to either sue after the initial final denial or have another bite at the apple by seeking reconsideration, he or she is relying on the Government's representation that the claimant will not be barred by the statute of limitations by electing this latter option.").

The Government's diligence argument is circular: because Gagliano did not file by the date the limitations period ended, she must not have been diligent. (Def.'s Mot. to Dismiss at 10–11). But the whole need for equitable tolling arises because the plaintiff has failed to file within the limitations period. Diligence cannot rise and fall with whether the claim was timely filed.

The Government also suggests that Gagliano was not diligent because she failed to file suit before the VA issued its reconsideration decision. (Def.'s Reply at 2). In its view, the plain language of § 14.9 should have alerted her to the possibility that the limitations period would run out, even in the absence of a decision on reconsideration from the VA. (*Id.*). This argument assumes that Gagliano was just waiting, "indefinitely," for the VA to resolve reconsideration before she filed suit. (*Id.* (quoting *Solomon v. United States*, 566 F. Supp. 1033, 1035 (E.D.N.Y. 1982)). But nothing in the record supports such a theory. When the VA issued the reconsideration denial in May, Gagliano was still within the six-month limitations period to file suit, which only expired in October. Nothing suggests that she believed § 14.9 delayed her time to file *indefinitely*. This argument also ignores the intervening event, the VA's decision and its effect on Gagliano, who may well have believed that she only had until October to file until the VA told her otherwise. Having been informed she had more time, and then

9

taking advantage of that extra time, does not demonstrate a lack of diligence. *See, e.g.*, *Martinez*, 738 F.2d at 1112 ("This case does not involve an unreasonable or unnecessary delay. Nor does it constitute an attempt to revive a long state claim . . . . Far from sleeping on his rights, Martinez acted with utmost diligence pursuing his claim first through administrative channels and ultimately to this court.").

The Government next asserts that Gagliano's lawyers should have known better. (Def.'s Reply at 7). In its view, her lawyers should have concluded that the VA was wrong, because an agency—as a matter of law—has no ability to extend the statute of limitations. (Def.'s Mot. to Dismiss at 7–11). These lines of argument elide the precise question presented: notwithstanding the agency's own extension of a filing deadline, is the limitations period from its own regulation still applicable? No case cited by the Government answers that question, provides an example where the limitations bar was imposed despite an agency misrepresentation to the contrary, or suggests that when an agency extends a filing period by regulation—which § 14.9 does—it cannot extend the deadline even further. (Def.'s Reply at 1).

Tellingly, almost every case cited by the Government predates the Supreme Court's 2015 decision in *Wong*. There, the Supreme Court held that the FTCA statute of limitations period was non-jurisdictional, and therefore subject to equitable tolling. *See supra* at 6. The Government's outdated pre-*Wong* caselaw is inapposite. (*See* Def.'s Mot. to Dismiss at 7 (citing *Solomon*, 566 F. Supp. at 1035 ("Compliance with the statute of limitations under the FTCA is a jurisdictional prerequisite[.]"); *Isahack v. United States*, No. 00-CV-9656, 2001 WL 1456519, at *3 (S.D.N.Y. Nov. 15, 2001) ("[A] jurisdictional

10

time bar.")).[2]  The passing phrases about agency power quoted by the Government cannot mean what the Government says they do.  Taken to their logical conclusion, the DOJ and VA would lack any power to toll the limitations period during a request for reconsideration, making its own regulation, § 14.9, invalid.  This regulation and countless others (that the government does not disavow) were not enacted by Congress and cannot be found in the enabling statute.  They were put into place by agencies themselves to toll the FTCA limitations period.  *See* 28 U.S.C. § 2672; Administrative Claims Under Federal Tort Claims Act, 31 Fed. Reg. 16616 (Dec. 29, 1966), *as amended by* Amendment of Claims and Reconsideration of Claims Denied, 35 Fed. Reg. 314 (Jan. 8, 1970).  There is no prohibition on agency action that leads to the inexorable legal conclusion that the VA's representation about the filing period must be wrong.[3]

As for the general proposition that the limitations period in the FTCA and § 14.9 are applied inflexibly, and so a lawyer should have inferred that the VA's representation was legally incorrect, the Government does not cite to a single controlling decision by the Second Circuit.  Instead, it asks this Court to follow a more

---

[2] *Isahack* is the only case that is remotely close to the facts here.  But in *Isahack*, the Court concluded that the plaintiff could not rely on the letter she received from the U.S. Postal Service stating she had an additional six months to file suit in federal court, because the limitations period had already expired when she requested reconsideration. 2001 WL 1456519, at *3.  In other words, she was never entitled to any tolling to begin with, and her suit was barred from the start.

[3] Indeed, agency *inaction* may lead to FTCA claims being filed in federal court years after claim accrual.  *Taumby v. United States*, 919 F.2d 69, 70 (8th Cir. 1990) ("[T]he government now concedes that there is no time limit for the filing of an FTCA action when an administrative claim is deemed to be denied under 28 U.S.C. § 2675(a) (1988) by virtue of an agency's failure to finally dispose of the claim within six months.").

11

than 40-year-old pre-*Wong* decision interpreting regulations for the U.S. Postal Service. (*See* Def.'s Mot. to Dismiss at 5 (citing *Solomon*, 566 F. Supp. at 1035)). That case has little relevance.[4] And none of the other cited cases squarely address the question presented here.[5] In other words, it is impossible to fault Gagliano's lawyers for not uncovering legal authority that suggests a time bar applies in the face of the Government's representation to the contrary, when the Government itself cannot.

There is little doubt that these circumstances are extraordinary and beyond Gagliano's control, and that they precluded her from bringing her claim in a timely fashion. While the circumstances that warrant equitable tolling cannot be exhaustively catalogued, they include when "the plaintiff has refrained from commencing suit during the period of limitation because of inducement by the defendant[.]" *Am. Pipe &*

---

[4] *Solomon* based its decision almost entirely on *In re Agent Orange Prod. Liab. Litig.*, 506 F. Supp. 757, 760 (E.D.N.Y. 1980), which the Government also cites here. But *In re Agent Orange* found an agency could not extend the FTCA limitations period because it was jurisdictional and therefore not amenable to tolling. That, of course, is no longer the law after *Wong*.

[5] *Metro. Prop. & Cas. Ins. Co. v. United States*, No. 90-CV-3435, 1991 WL 37082, at *2 (E.D.N.Y. Mar. 12, 1991) stands for the unremarkable proposition that § 14.9 extends the time to file and only involved the question of whether a reconsideration request was filed. *Palmer-Williams v. United States,* No. 14-CV-9260, 2016 WL 676465, at *7–*8 (S.D.N.Y. Feb. 18, 2016), *aff'd*, 675 F. App'x 70 (2d Cir. 2017), is in the same vein and the Court in that case *relies* on deadline set by the agency's denial notice in barring the claim. *Roman-Cancel v. United States*, 613 F.3d 37, 43 (1st Cir. 2010) addresses the factually inapposite situation, like *Isahack*, of a plaintiff who sought reconsideration *after* the limitations period had already expired in an attempt to resuscitate her claim. And *Irvin v. United States*, 07-CV-0926, 2007 WL 9706489, at *5 (N.D. Ga. Oct. 9, 2007), which the Court presumes the Government intended to reference despite its cite to 2007 WL 9706498, which leads to *Hayes v. Equity Title & Escrow Co. of Memphis, LLC*, No. 05-2019, 2007 WL 9706498, at *1 (W.D. Tenn. Mar. 19, 2007), involved the inapposite situation of a plaintiff who failed to exhaust before the agency.

*Const. Co. v. Utah*, 414 U.S. 538, 559 (1974); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959) ("[P]etitioner is entitled to have his cause tried on the merits if he can prove that respondent's responsible agents, agents with some authority in the particular matter, conducted themselves in such a way that petitioner was justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it had accrued."); *State of N.Y. v. Sullivan*, 906 F.2d 910, 917 (2d Cir. 1990) ("[E]quitable tolling is in order when government misconduct keeps plaintiffs from appreciating the scope of their rights.").

The Government misled Gagliano into thinking that she had more time than she did to bring her lawsuit. Being misled—even in the absence of fraud—by a federal agency is sufficient to obtain equitable tolling. *See Boykin v. KeyCorp*, 521 F.3d 202, 218 (2d Cir. 2008) (Winter, J., concurring) ("Other circuits have held that a misleading agency letter can lead to equitable tolling[.]"). *Valdez ex rel. Donely v. United States*, 518 F.3d 173 (2d Cir. 2008), is instructive in this regard.

In *Valdez*, the mother of a child born with severe brain damage sought to sue the physicians who provided her care during childbirth for malpractice. The mother brought suit in New York state court within the state limitations period. *Id.* at 176. It turned out, however, that the doctors were considered employees of the United States, so the suit could only be brought pursuant to the FTCA, under which the suit was time-barred. *Id.* at 183. The Court of Appeals reversed the dismissal of the suit, remanding for a determination of whether equitable tolling was available. *Id.* at 184–85. It reasoned that the Government had failed to disclose that the physicians were federal

13

employees; patients received no notice of that fact at any point. *Id.* at 183. Even though such conduct was not fraud, by engaging in this nondisclosure, the Government had created a "statute of limitations trap" for unwary litigants. *Id.* What made the behavior problematic, and therefore a basis for tolling, was that the Government, aware of the trap and the consequences of nondisclosure of the status of its doctors, had taken advantage of it, and used it to dismiss many lawsuits. *Id.* (collecting cases).

Here, the Government acted not by omission, but by affirmative misrepresentation. Its "trap" was to lead Gagliano to believe that she had more time to sue than she did. Notably, while the letter from the VA warned Gagliano that she could not rely on it (and had to make her own determination) to calculate limitations periods *under state law*, there is no similar warning that she should not rely on the letter's representation about the ability to bring a claim under the FTCA. (Ltr. Den. Recons.). Indeed, the letter goes out of its way to cite the FTCA and say that a lawsuit may be filed within the next six months. *Id.* In *Isahak*, *supra* at 11 n.2, the Government took the position that the Postal Service's representation about time to sue could not be relied upon. 2001 WL 1456519, at *3. That case was decided in 2001. This Court hopes that federal agencies have not been misleading FTCA plaintiffs, lulling them into believing they had more time to sue than the statute permitted, for the last 25 years.

For these reasons, Gagliano is entitled to equitable tolling of the statute of limitations until the date the VA represented to her: November 17, 2024. *E.g.*, *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) ("[W]e have excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by

14

a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period[.]" (internal citations omitted)); *Alsaras v. Dominick's Finer Foods, Inc.*, 248 F.3d 1156 (7th Cir. 2000) ("This circuit, as well as others, has held that when an administrative agency misleads a complainant . . . equitable tolling may be justified.") (collecting cases); *Martinez*, 738 F.2d at 1111–12 (finding equitable tolling appropriate where reasonable reading of EEOC notice implied limitations period did not commence until issuance of reconsideration decision).[6]

The Government's win-at-all-costs attitude, ignoring the implications and inconsistencies of the arguments it has advanced, while failing to acknowledge its own serious error, undermines the public's confidence that the Government's reasons "are not simply 'convenient litigating position[s].'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 9 (2020) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). "[W]hen so much is at stake," as is true here, "the Government should turn square corners in dealing with the people." *Id.* (quoting *St. Regis Paper*

---

[6] This same conduct does not entitle Gagliano to equitably estop the government from asserting the statute of limitations defense. "Estoppel to the government [applies] only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." *Cannon Corp. & Subsidiaries v. Comm'r of Internal Revenue*, No. 23-7693, 2025 WL 517664, at *4 (2d Cir. Feb. 18, 2025) (quoting *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994)). However, the Court is unable to locate a single case—and Gagliano identifies none—where a misrepresentation, standing alone, without fraudulent intent on the part of a Government official, is sufficient to estop the government from asserting a limitations defense. The authority cited by Gagliano from immigration cases, which present particular concerns and unique liberty interests, *see, e.g.*, *Schwebel*, 967 F.3d at 103, are inapposite here.

15

*Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)).  The Court is "compelled to suggest" that the VA—and all the agencies the Government represents in this District—"take heed of the confusion [its] notice has engendered and modify it accordingly." *Martinez*, 738 F.2d at 1112.

    The motion to dismiss is denied.

                                                     SO ORDERED.

                                        */s/ Sanket J. Bulsara*
                                        SANKET J. BULSARA
Date:  October 29, 2025              United States District Judge
       Central Islip, New York